UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

MICHAEL TYROME ESTELLE, JR.,

                Plaintiff,

v.

PATRICIA SCHMIDT et al.,

                Defendants.

_____/

Case No. 1:24-cv-530

Honorable Robert J. Jonker

## OPINION

This is a civil rights action brought by a pretrial detainee under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. At the time Plaintiff filed this action, he was awaiting trial on criminal sexual conduct charges. Case Details, *People v. Estelle*, No. 2022-0000002662-FC (Calhoun Cnty. Cir. Ct.), https://micourt.courts. michigan.gov/case-search/ (select Continue, select Calhoun County 37th Circuit Court, enter Last Name "Estelle," enter First Name "Michael," select Search, select Case ID "2022-0000002662-FC") (last visited Jan. 2, 2025). On August 29, 2024, a Calhoun County Circuit Court jury convicted Plaintiff of four counts of first-degree criminal sexual conduct and one count of second-degree criminal sexual conduct. *Id*. The trial court scheduled sentencing for November 4, 2024. *Id*.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42

U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Corizon, YesCare, Captain Tracey Chambers, Sheriff Steven Hinkley, Registered Nurse Christina Torres, and Dr. Patricia Shmidt.[1] The Court will also dismiss, for failure to state a claim, Plaintiff's Fourteenth Amendment claims against remaining Defendant Physician Assistant (PA) Ron Applebey relating to Plaintiff's medical care at the CCCF from August 2022 to May 2024. Finally, the Court will dismiss without prejudice Plaintiff's state-law medical malpractice claims because the Court declines to exercise supplemental jurisdiction over them based upon principles of federal-state comity.

Plaintiff's Eighth Amendment claim against Defendant Applebey relating to Plaintiff's medical care at the Calhoun County Correctional Facility (CCCF) during November and December of 2021 is the only claim that remains in the case. Plaintiff's requests for appointment of counsel (ECF Nos. 7, 9) will be denied.

<u>Discussion</u>

## I.    **Plaintiff's Motions to Appoint Counsel**

Plaintiff, who is proceeding *in forma pauperis*, has filed two motions requesting a court-appointed attorney. (ECF Nos. 7, 9.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir.

---

[1] Plaintiff's spelling of the doctor's name has changed from his initial filings to his later filings. The Court will use the spelling that Plaintiff has used most recently: Shmidt. Similarly, Plaintiff's spelling of the physician assistant's last name has changed. The Court will use Plaintiff's most recent spelling: Applebey.

1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's requests for appointment of counsel (ECF Nos. 7, 9) will be denied.

## II.    Plaintiff's Complaint

Plaintiff's initial complaint is comprised of the Court's approved form complaint, completed and signed by Plaintiff. (Compl., ECF No. 1, PageID.1–4.) Attached to the form complaint are the following: a 28-page handwritten factual statement (ECF No. 1, PageID.5–32); an index of exhibits (ECF No. 1-1, PageID.35); an orthopedic office clinic note relating to Plaintiff's treatment on July 31, 2023 (ECF No. 1-2, PageID.36–38); a CCCF account statement detailing Plaintiff's financial transactions (ECF No. 1-3, PageID.39–56); a conversation activity report setting out communications between Dawn Bradley and Plaintiff from July 7, 2023, through August 7, 2023, (ECF No. 1-4, PageID.57); Calhoun County Office of the Sheriff Inter-Office Memo dated March 18, 2024 (ECF No. 1-5, PageID.58); a handwritten report of Plaintiff's kites and grievances, an authorization for release of Plaintiff's medical records (specifically, kites and grievances), and another handwritten list of "grievances to medical about injury/rehab/pain" (ECF No. 1-6, PageID.59–61); and a final one-page handwritten note signed by Plaintiff regarding his complaint (ECF No. 1-7, PageID.63).

The day after the Court received Plaintiff's complaint, the Court received a "supplement." The supplement was identical to the four-page form complaint that Plaintiff filed except that he spelled the surnames of two of the Defendants differently. Specifically, Defendant Schmidt became Defendant Shmidt and Defendant Applebee became Defendant Applebey. (ECF No. 4, PageID.87–90.) One month later, Plaintiff filed an "Amended Complaint" with an attached "Declaration." (ECF No. 6, PageID.97–103, 106–107.) By way of this filing, Plaintiff added Defendants Hinkley and Chambers.

Finally, on August 20, 2024, Plaintiff filed a "Second Amended Complaint," which is comprised of the following: a new completed and signed Court-approved form complaint (ECF No. 8, PageID.112–115) and the handwritten "Amended Complaint" that he had filed two months earlier (ECF No. 8, PageID.116–122).

Typically, an amended complaint supersedes the pleading it is intended to amend. The Supreme Court's instruction to read *pro se* complaints indulgently, *Haines*, 404 U.S. at 52, suggests that the Court might appropriately look beyond the general rule that amended complaints supersede the original. Here, none of Plaintiff's four separate submissions include all of the allegations or other information that Plaintiff obviously intends to serve as his complaint. Therefore, the Court concludes that Plaintiff intended his various filings to, at least in part, supplement his earlier submissions rather than displace them. The Sixth Circuit has concluded that "[i]f . . . the party submitting the pleading clearly intended the latter pleading to supplement, rather than supersede, the original pleading, some or all of the original pleading can be incorporated in the amended pleading." *Clark v. Johnston*, 413 F. App'x 804, 811–12 (6th Cir. 2011). Accordingly, the Court will indulgently construe Plaintiff's second amended complaint, (ECF No. 8), to include all attachments to Plaintiff's initial complaint (ECF No. 1, PageID.5–32; ECF

4

Nos. 1-1 through 1-7) and the "Declaration" attached to the "Amended Complaint" (ECF No. 6, PageID.106–107).

## III.    Factual Allegations

Plaintiff is presently incarcerated in the Michigan Department of Corrections (MDOC) Charles Egeler Reception and Guidance Center. *See* MDOC Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=721653 (last visited Jan. 2, 2025). At the time of the events alleged in Plaintiff's complaint, however, Plaintiff was housed in the CCCF.

Plaintiff sues entities contracted to provide healthcare services at the CCCF: Corizon and YesCare.[2] Plaintiff also sues Dr. Patricia Shmidt, PA Ron Applebey, and Registered Nurse Christina Torres, who were employed by Corizon and YesCare to provide healthcare services at the CCCF. Plaintiff sues Defendants Shmidt, Applebey, and Torrres in their individual and personal capacities. Finally, Plaintiff sues Calhoun County Sheriff Steve Hinkley and CCCF Captain Tracey Chambers.

Plaintiff alleges that on November 4, 2021, while he was serving a 90-day sentence at the CCCF, he was involved in an altercation with inmate Greg Dwyer. (ECF No. 1, PageID.5.) After the incident, Plaintiff suffered significant swelling, a burning sensation, and severe pain in both hands. (*Id*.) Moreover, there was a bone protruding upwards from Plaintiff's left hand behind the first knuckle of "the pinky finger." (*Id*.)

The damage to Plaintiff's hands was so obvious that that the deputies who intervened took Plaintiff directly to the medical ward for treatment. (*Id*.) Because of the obvious broken bone in

---

[2] Plaintiff describes YesCare as a successor to Corizon. The Supreme Court recently denied a writ of certiorari on a case involving YesCare. *Resper v. YesCare Corp*., 144 S. Ct. 1398 (2024). In the caption, YesCare Corp. was described as follows: "YesCareCorp., fka Corizon Health, Inc." *Id*.

Plaintiff's left hand, the medical staff knew that x-rays were required. (*Id.*, PageID.6–7.) Defendant Applebey decided to order the x-ray machine to be brought to the jail rather than order that Plaintiff be taken to the hospital for x-rays. (*Id.*, PageID.7.)

Plaintiff waited four days in the medical ward for the x-ray machine. (*Id.*, PageID.8.) During that time he suffered significant pain but was treated with only Tylenol and ibuprofen. (*Id.*) According to Defendant Applebey, after reviewing the x-rays, the broken bone in Plaintiff's left hand was broken all the way through, but there was nothing wrong with Plaintiff's right wrist. (*Id.*) Applebey decided to cast Plaintiff's broken bone at the CCCF. (*Id.*, PageID.9.)

Plaintiff continued to suffer right wrist pain. He informed medical staff through the electronic kiosk system. (*Id.*, PageID.10.) Plaintiff saw Defendant Applebey regarding the wrist. Applebey was adamant that there was nothing wrong with the wrist. (*Id.*, PageID.11.) While Plaintiff was with Applebey, Defendant Shmidt was in the office no more than 10 feet away. (*Id.*)

Although Plaintiff continued to complain about the pain, he received no more treatment. (*Id.*, PageID.12.) On December 12, 2021, Plaintiff was released from the CCCF. (*Id.*)

Upon his release, Plaintiff went to a hospital in Jackson, Michigan. (*Id.*) His cast was removed and his left hand was x-rayed. (*Id.*, PageID.13.) The x-ray revealed that the left hand had healed. (*Id.*) Plaintiff's right hand was also x-rayed and subjected to an MRI. (*Id.*) The x-ray confirmed that there had been no break in the right wrist. (*Id.*)

About a week later, Plaintiff heard from an orthopedic specialist. (*Id.*) The specialist informed Plaintiff that the left hand had healed incorrectly because Applebey never aligned the bone before he placed the cast. (*Id.*, PageID.14.) The specialist suggested correcting the left hand injury with surgery. (*Id.*, PageID.15.)

Plaintiff reports that the specialist was more concerned with Plaintiff's right wrist. (*Id*.) He said that injury would never heal on its own, but would only get worse with time. (*Id*.) Plaintiff agreed to undergo surgery in May of 2022. (*Id*.) The surgery was rescheduled for August of 2022. (*Id*., PageID.16.) Plaintiff could not get to the hospital on the scheduled date. (*Id*.) Then, on August 29, 2022, Plaintiff was arrested on the criminal sexual conduct charges. (*Id*., PageID.17.) He was then detained in the CCCF from that date until his transfer to the custody of the Michigan Department of Corrections after his sentencing on November 4, 2024. (*Id*.)

Plaintiff was examined by Defendant Applebey upon Plaintiff's return to the CCCF. (*Id*.) When Plaintiff informed Applebey of the problems with Plaintiff's hand and wrist, Applebey reached out to the specialist. (*Id*., PageID.18.) Within two weeks, Plaintiff met for the first time with Defendant Shmidt. (*Id*.) Shmidt agreed to go forward with the surgery. (*Id*., PageID.19.) Plaintiff had the surgery on March 21, 2023. (*Id*., PageID.20.)

The surgeon prescribed Naproxen and Norco for pain and swelling. (*Id*.) It appears that Plaintiff did not have any problem getting the Naproxen; but he reports difficulty with the Norco. (*Id*., PageID.20–28.) Plaintiff contends that he was prescribed 30 Norco, 1 pill twice a day for 15 days. (*Id*., PageID.20–21.) In the days that followed, he was given 10–12 pills. (*Id*., PageID.21–22.) Plaintiff indicates that he then went without the Norco for about two weeks. (*Id*., PageID.23.) At that point, he returned to the surgeon for a follow-up appointment. (*Id*.) The surgeon wrote a new prescription for the Norco. (*Id*., PageID.24.) Plaintiff received "about 18 pills" from the second Norco prescription and then he was told the medication had been discontinued. (*Id*., PageID.25.) Plaintiff secured one more Norco prescription upon a return trip to the specialist. This time he sat down with Defendant Shmidt. (*Id*., PageID.25–27.) They agreed that Plaintiff would take two pills per day for 15 days. (*Id*.) Ultimately, however, after ten days of following that

arrangement, Plaintiff was told the pills were all gone.[3] (*Id.*) Plaintiff posits that someone on the medical staff was stealing his Norco. (*Id.*, PageID.26.)

Plaintiff contends that Defendants violated his Eighth Amendment and Fourteenth Amendment rights, (Second Am. Compl., ECF No. 8, PageID.119), and seeks the following relief:

1. A declaration that the acts and omissions described herein violated Plaintiff's rights under the Constitution and laws of the UNITED STATES.

2. A preliminary and permanent injunction ordering defendants Patricia Shmidt, Ron Applebey, Christina Torres, Corizon/YesCare, Tracey Chambers and Steve Hinkley to stop violating the fund[a]mental and constitutional rights of each and every inmate[, a]nd to take accountability for the lack of concern for the inmates and their well-being at the Calhoun County Correctional Center.

3. Compensatory damages in the amount of [$]250,000.00 annual[l]y for the remainder of Plaintiff's natural life, jointly coming from the medical provider "YesCare" and its staff Patricia Shmidt, Ron Applebey and Christina Torres[, a]s well as full health coverage for the remainder of the Plaintiff's natural life[, i]ncluding dental, vision, medicine, surgery and whatever else medical expenses the judge deem[s] necessary. "Note" that the Calhoun County Correctional Center and its sheriff's department shall not be exempt from these damages . . . [.] However, the Plaintiff is not requesting sep[a]rate compensatory damages of the defendants named herein. Being that the Defendants acted collectively together in the events which led to the violations of the Plaintiff's constitutional right6s, as well as the mishaps he endured. The Plaintiff also feels that collectively the sum total amount that he's seeking in compensatory damages can be achieved through such means.

4. Punitive damages in the amount of [$]52,000.00 against each defendant[, a]nnually for two years.

(*Id.*, PageID.120–121.)

---

[3] The Court interprets Plaintiff's allegations as involving three prescriptions, from the first prescription he received twelve pills, from the second he received 18 pills, and from the third he received 20 pills—that would be 50 pills out of the 90 pills he was prescribed. But Plaintiff's pleading style is somewhat muddled. Based on the date he contends that he and Defendant Shmidt agreed to two pills a day for 25 days, it is possible that there were only two prescriptions and Plaintiff received 30 or 38 of 60 pills prescribed, depending on how you parse his allegations. No matter what interpretation is correct, Plaintiff alleges that he received half or slightly more than half of the prescribed pills.

IV.    **Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## V.    Discussion

### A.    Defendants Chambers and Hinkley

Defendants Chambers and Hinkley are not mentioned in Plaintiff's initial complaint or the detailed handwritten factual statement attached to that complaint. They are identified in Plaintiff's second amended complaint as follows:

> Defendant, Tracey Chambers, Captain. He is the captain of the CALHOUN County Correctional Center. He is legally responsible for the operation of the Calhoun County Correctional Center, and for the welfare of all the inmates in this County Jail.

> Defendant, STEVE Hinkley, Sheriff. He's the head of the sheriff's department which employ[]s the sheriff's deputies (Guards) that work within the Jail. He is legally responsible for the overall operation of the department and the county jail under its jurisdiction, including the Calhoun County Correctional Center.

(Second Am. Compl., ECF No. 8, PageID.118–119.) Plaintiff makes no further factual allegations regarding Defendant Chambers or Defendant Hinkley; but he does allege that he was wronged by unnamed sheriff [']s deputies:

> The Plaintiff is seeking relief for the violation and contravening of the 8th and 14th amendment[ rights] by the . . . sheriff[']s deputies at the Calhoun County Correctional Center. . . . Also the "CCJ" sheriff's deputies acted negligently concerning the plaintiff[']s injuries when they had him placed in administration segregation with his injuries.

(*Id*., PageID.119.)[4]

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must

---

[4] According to Plaintiff's handwritten factual statement, he was placed in segregation for three days after a four-day stay in the medical ward where his hands were x-rayed and his broken left hand was immobilized in a cast. (ECF No. 1, PageID.7–10.)

make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Plaintiff does not mention any conduct by Defendants Chambers or Hinkley; therefore, his allegations fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Although Plaintiff does not allege any facts regarding the conduct of Defendants Chambers or Hinkley, Plaintiff does specifically mention the supervisory relationship between Chambers and Hinkley, on the one hand, and the sheriff's deputies at the CCCF, on the other hand.

To the extent that Plaintiff seeks to hold Defendants Chambers and Hinkley liable for the actions of their subordinates, government officials, such as Defendants Chambers and Hinkley, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The United States Court of Appeals for the Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993),

Here, Plaintiff fails to allege any *facts* showing that Defendants Chambers and Hinkley encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in the conduct. Plaintiff's vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendants Chambers and Hinkley were personally involved in the alleged violations of Plaintiff's constitutional rights. Because Plaintiff has failed to allege that Defendants Chambers and Hinkley engaged in any active unconstitutional behavior, Plaintiff fails to state a claim against them.

### B.    Defendant Corizon/YesCare

Plaintiff alleges that Defendants Corizon and YesCare, as private companies, contracted with Calhoun County to provide healthcare services at the CCCF. A private entity that contracts with the state to perform a traditional state function like providing healthcare to inmates can "be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West*, 487 U.S. at 54). The requirements for a valid § 1983 claim against a municipality apply equally to private corporations that are deemed state actors for purposes of § 1983. *See Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell*, 436 U.S. 658, has been extended to private corporations); *Street*, 102 F.3d at 817–18 (same); *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990) (same); *Cox v. Jackson*, 579 F. Supp. 2d 831, 851–52 (E.D. Mich. 2008) (same).

"Under 42 U.S.C. § 1983, while a municipality can be held liable for a constitutional violation, there is no vicarious liability based on the acts of its employees alone." *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020) (citing *Monell*, 436 U.S. 690–91). Instead, a municipality "can be sued under § 1983 only when a policy or custom of that government caused the injury in question." *Id.* (citations omitted). "[T]he finding of a policy or custom is the initial determination to be made in any municipal liability claim." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir.

13

1996). Further, the policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity, and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005) (citing *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003)); *Claiborne Cnty.*, 103 F.3d at 508–09.

Consequently, because the requirements for a valid § 1983 claim against a municipality apply equally to Corizon or YesCare, their liability, like a municipality's liability, "must also be premised on some policy [or custom] that caused a deprivation of [a prisoner's] Eighth Amendment rights." *Starcher*, 7 F. App'x at 465. Additionally, the § 1983 liability of Corizon and/or YesCare, as employers of Defendants Shmidt, Applebey, or Torres. cannot be based on a theory of respondeat superior or vicarious liability. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citation omitted). Here, although Plaintiff believes that he has received inadequate medical care, Plaintiff fails to allege the existence of a custom or policy of Defendant Corizon or Defendant YesCare, let alone that any policy or custom was the moving force behind his alleged constitutional injuries. Where a plaintiff fails to allege that a policy or custom existed, dismissal of the claim for failure to state a claim is appropriate. *See Rayford v. City of Toledo*, No. 86-3260, 1987 WL 36283, at *1 (6th Cir. Feb. 2, 1987).

Accordingly, because Plaintiff fails to allege the existence of a policy or custom of Corizon or YesCare, he has failed to state a § 1983 claim against them. Plaintiff's § 1983 claims against Defendant Corizon and Defendant YesCare will be dismissed.

### C.    Constitutionally Inadequate Medical Care

Plaintiff contends that Defendants violated his Eighth and Fourteenth Amendment rights by failing to provide adequate medical care for the injuries to his hands. Plaintiff describes

14

Defendants' conduct as "cruel and unusual punishment," (Second Am. Compl., ECF No. 8, PageID.114; Declaration ECF No. 6-1), which is conduct prohibited by the Eighth Amendment.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).

For a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837.

15

But the Eighth Amendment limitation applies to "punishments," and a pretrial detainee "may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (footnote and citations omitted). Put differently, the Eighth Amendment's limit on "punishment" does not apply to a pretrial detainee because a pretrial detainee may not be punished at all. *Id*. at 536–37 (explaining that "the Government concededly may detain him to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment"). When a claim of deliberate indifference "is asserted on behalf of a pretrial detainee, the Due Process Clause of the Fourteenth Amendment is the proper starting point." *Griffith v. Franklin Cnty*., 975 F.3d 554, 566 (6th Cir. 2020) (internal quotation marks and citations omitted).

Until recently, whether the Court considered a deliberate indifference claim under the Eighth Amendment or the Fourteenth Amendment did not make a difference because the Sixth Circuit "analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric.'" *Greene v. Crawford Cnty*., 22 F.4th 593, 605 (6th Cir. 2022) (quoting *Brawner v. Scott Cnty*., 14 F.4th 585, 591 (6th Cir. 2021)). In *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), in the context of considering a pretrial detainee's claim for the use of excessive force, the Supreme Court concluded that application of the Eighth Amendment standard—requiring that the "detainee must show that the officers were *subjectively* aware that their use of force was unreasonable"—was not appropriate. 576 U.S. at 391–92. Instead, the Court held that a "detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id*. at 396–97.

In *Brawner*, the Sixth Circuit concluded that the modification of the subjective component that *Kingsley* applied in the excessive force context was appropriately applied to other deliberate-

indifference claims.[5] The *Brawner* court described the modification as a shift from the criminal recklessness standard adopted for the subjective element of an Eighth Amendment claim in *Farmer v. Brennan*, 522 U.S. 825 (1994), in favor of a "civil standard for recklessness," *Brawner*, 14 F.4th at 596. *Farmer* described that civil standard as follows: "[t]he civil law generally calls a person reckless who acts or (if the person has a duty to act) fails to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Farmer*, 522 U.S. at 836; *see also Howell v. NaphCare, Inc*., 67 F.4th 302, 311 (6th Cir. 2023) (explaining that "[a]pplying *Kingsley*'s reasoning, *Brawner* held that a pretrial detainee must make a showing . . . that each defendant acted deliberately [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known" (internal quotation marks, footnote, and citations omitted)). This is a "distinction with[] a difference." *Howell*, 67 F.4th at 311.

When Plaintiff was housed at the CCCF during November and December of 2021, he was convicted of a crime and serving a 90-day sentence. During that time period, Plaintiff was protected by the Eighth Amendment. When Plaintiff returned to the CCCF at the end of August 2022, he was detained pending trial on the criminal sexual conduct charges for which he was recently sentenced. From August of 2022 until November 4, 2024, when Petitioner was sentenced, he was protected by the Due Process Clause of the Fourteenth Amendment. For that reason, the Court will address the two time periods separately.

    **1.    Eighth Amendment Claim (November and December of 2021)**

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards

---

[5] The *Brawner* decision was issued during September of 2021, before the events alleged in Plaintiff's complaint.

of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated

when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.*

at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical

needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical

care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced,

deliberate indifference to a prisoner's serious illness or injury states a cause of action under

§ 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective

component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege

that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that

he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective

component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's

need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d

890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).

Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman

cannot see the medical need, a condition may be obviously medically serious where a layman, if

informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*,

*Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died

from a perforated duodenum exhibited an "objectively serious need for medical treatment," even

though his symptoms appeared to the medical staff at the time to be consistent with alcohol

withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed

tendon was a "quite obvious" medical need, since "any lay person would realize to be serious,"

even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted), *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardiman Cnty., Tenn.*, 93 F.4th 919 (6th Cir. 2024).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state

19

a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v.*

*Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Plaintiff alleges that, on November 4, 2021, when he first was examined by Defendant Applebey, a protruding bone was visible, and that the deputies were sufficiently concerned that they immediately brought Plaintiff for medical treatment. Courts have often found that a broken hand is a serious medical need. *See, e.g.*, *Hubbard v. Gross*, 199 F. App'x 433, 438 (6th Cir. 2006) (stating that "Hubbard's broken and swollen hand was so obvious that even a layperson would easily recognize the necessity for a doctor's attention" (internal quotation marks omitted)); *Kimbrough v. Core Civic*, No. 1:19-cv-48, 2019 WL 2502558, at *2–3 (M.D. Tenn. June 17, 2019) (finding that the plaintiff's allegations that the defendants significantly delayed treating plaintiff's broken hand and, thus, were deliberately indifferent to a serious medical need); *Small v. Clements*, No. 3:18-cv-1731 (KAD), 2018 WL 5634942, at *3 (D. Conn. Oct. 31, 2018) (stating '[w]hile courts generally hold that a broken finger is not serious, broken bones in the hand are considered serious medical needs") (citing case). The Court concludes that, at this preliminary stage, Plaintiff has adequately alleged a serious—and obvious—medical need.

Because the deliberate indifference prong of the analysis is subjective, the Court will address each of the remaining Defendants separately.

### a.    Defendant Applebey

Plaintiff alleges that Defendant Applebey, rather than sending Plaintiff out for x-rays of his obviously broken hand, ordered the x-ray machine brought to the jail. It was four days later before Plaintiff's hand was imaged. At this early stage of the proceedings, although Applebey offered Plaintiff treatment after the x-ray, the Court agrees with Plaintiff that Applebey leaving Plaintiff for four days waiting on an x-ray with only Tylenol and ibuprofen for pain at least supports an inference of deliberate indifference. Accordingly, the Court concludes that Plaintiff has stated an

Eighth Amendment deliberate indifference claim against Defendant Applebey for making Plaintiff wait days for treatment for his broken hand.

The same is not true, however, with regard to Plaintiff's injury to his right wrist. Applebey concluded, correctly, that the right wrist was not broken. Plaintiff continued to complain about pain in his right wrist. Nonetheless, Plaintiff reports that Defendant Applebey took no further action. After Plaintiff was released from the CCCF, he sought care at a hospital in Jackson, Michigan.. The hospital performed x-rays and subjected Plaintiff to an MRI. (ECF No. 1, PageID.13.) Those x-rays "confirmed that the left hand had healed [a]nd that there was no break sustained to the right wrist." (*Id*.) Only the MRI images revealed additional problems. (*Id*.) Under these circumstances, Plaintiff does not allege facts that support an inference that Applebey was aware of a risk of harm with respect to Plaintiff's right wrist and then disregarded that risk.[6] Thus, at least during the November/December 2021 time-frame, Plaintiff has failed to state an Eighth Amendment claim for deliberate indifference by Defendant Applebey with regard to Plaintiff's right wrist.

---

[6] Plaintiff has not alleged facts that might support an inference that Applebey was deliberately indifferent for failing to obtain MRI imaging of Plaintiff's right wrist. As noted above, "[i]f a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake*, 537 F.2d at 860 n.5. "[P]risoners do not have a constitutional right to limitless medical care, free of the cost constraints under which law-abiding citizens receive treatment." *Winslow v. Prison Health Servs.*, 406 F. App'x 671, 674 (3d Cir. 2011) (citations omitted); *see Reynolds v. Wagner*, 128 F.3d 166, 175 (3d Cir. 1997) ("[T]he deliberate indifference standard of *Estelle* does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society."). Here, Plaintiff's allegations do not suggest that Applebey intentionally chose to forego MRI testing due to cost or any other reason. To the contrary, the facts alleged by Plaintiff suggest that Applebey did not believe there was anything wrong with Plaintiff's wrist that time would not heal. Those facts might support a negligence claim; but they do not permit an inference of deliberate indifference for failure to obtain an MRI.

### b.    Defendant Shmidt

During November and December of 2021, Plaintiff alleges that Dr. Shmidt was "within 10 feet walking distance" on one occasion while Plaintiff complained to Defendant Applebey about the continuing pain in Plaintiff's right wrist. (ECF No. 1, PageID.11.) This allegation does not support an inference that Defendant Shmidt was aware of a substantial risk of serious harm to Plaintiff's health and disregarded that risk.

It is possible that Plaintiff seeks to hold Defendant Shmidt responsible for the conduct of Defendant Applebey or Defendant Torres as their superior. As noted above, however, Plaintiff cannot hold Defendant Shmidt liable for the actions of her subordinates. "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Because Plaintiff has not alleged any active involvement by Defendant Shmidt during this time period, he has failed to state an Eighth Amendment deliberate indifference claim against her.

### c.    Defendant Torres

Plaintiff makes no allegations against Defendant Torres regarding this time frame. Therefore, he has failed to state an Eighth Amendment deliberate indifference claim against her with regard to the events of the November/December 2021 time-frame.

### 2.    Fourteenth Amendment Due Process Medical Claims (August 2022 through November 2024)

*Farmer*'s first element of the Eighth Amendment analysis continues to be applicable to claims of pretrial detainees. *See, e.g. Batton v. Sandusky Cnty.*, No. 23-3168, 2024 WL 1480522, at *3 (6th Cir. Apr. 5, 2024) (noting that the elements of a deliberate indifference claim for a pretrial detainee mirror the elements for a convicted prisoner with an objective and subjective component, but the subjective component is modified). The Court concludes that the serious

medical need that existed during Plaintiff's punitive stay during November and December of 2021 existed upon Plaintiff's return to non-punitive detention during August of 2022, even though the immediate need for treatment may have been less obvious.

To establish the subjective element, Plaintiff "must prove 'more than negligence but less than subjective intent—something akin to reckless disregard.'" *Mercer v. Athens Cnty, Ohio*, 74 F.4th 152, 161 (6th Cir. 2023) (quoting *Brawner*, 14 F.4th at 596). When evaluating the subjective element, the Court must "consider each defendant individually because [the Court] cannot impute knowledge from one defendant to another." *Id*. (internal quotation marks and citations omitted).

### a.    Defendant Applebey

When Plaintiff returned to the CCCF at the end of August 2022, he put in a request for a bottom bunk detail. (Compl., ECF No. 1, PageID.17.) Plaintiff was called down to medical to explain the reason for the accommodation. (*Id*.) He was examined by Defendant Applebey. (*Id*.) After Plaintiff explained the reason, Defendant Applebey communicated with Plaintiff's offsite surgeon regarding Plaintiff's wrist. (*Id*., PageID.18.) The matter was then turned over to Defendant Shmidt. Thereafter, until Plaintiff's wrist surgery on March 21, 2023, Plaintiff makes no further allegations regarding Defendant Applebey.

After surgery, Plaintiff returned to the CCCF with prescriptions for Naproxen and Norco (Hydrocodone). (*Id*., PageID.20.) In total, Plaintiff reports that his surgeon wrote three prescriptions of Norco,[7] 30 pills each. Plaintiff's allegations suggest that he received 12 of the first 30 pill prescription, 18 of the second 30 pill prescription, and 20 of the third 30 pill prescription

---

[7] "Norco is a combination of acetaminophen and hydrocodone, an opioid pain reliever." *Lazarus v. Abilittif*, No. 1:12-cv-1279, 2013 WL 1500658 at *1, fn. 2 (W.D. Mich. April 10, 2013).

for a total of 50 Norco even though his surgeon prescribed 90.[8] Plaintiff attributes some of the shortfall to Applebey because he initially informed Plaintiff that the CCCF would fill the Naproxen, but he would have to confirm with the CCCF and the "medical provider" whether the Norco prescription could be filled. (*Id.*, PageID.20–21.) Applebey suggested that Plaintiff would probably not be permitted to have more than a few days of Norco. (*Id.*, PageID.21.) After three days in the medical ward and after taking 5 Norco, Applebey informed Plaintiff that he had reached the end of his prescription. (*Id.*)

That night, however, after Plaintiff informed the nurse he was suffering pain, the nurse indicated that there were, in fact, more Norco, but that the "medical provider" (Shmidt) would have to approve dispensing more to Plaintiff. (*Id.*, PageID.22.) Shmidt permitted Plaintiff 5 more Norco. (*Id.*) Additionally, while waiting to be transferred back to general population, another nurse asked Plaintiff if he wanted to have Norco. (*Id.*, PageID.23.) The nurse provided Plaintiff a Norco from a bottle with Plaintiff's name on it. (*Id.*) Applebey also expressed reservations about filling Plaintiff's second prescription. (*Id.*, PageID.24–25.) It appears that Plaintiff's third prescription was handled by agreement between Plaintiff and Defendant Shmidt. Plaintiff alleges that Defendant Applebey was merely present when Plaintiff discussed the third prescription with Defendant Shmidt. Plaintiff posits that the missing medication was stolen by the CCCF staff, but he does explain how he has personal knowledge of that fact. It appears to be entirely speculative. He does not attribute the theft to the Defendants.

There is nothing in the facts alleged regarding Applebey's reaction to Plaintiff's ongoing wrist problems during August of 2022 that evidences a reckless disregard for Plaintiff's serious

---

[8] There are other possible ways to interpret Plaintiff's allegations; but the Court cannot reconcile every fact Plaintiff states regarding his prescriptions into one coherent narrative. *See supra* note 3. The Court's disposition would be the same no matter which interpretation is correct.

medical needs. Applebey spoke with Plaintiff's surgeon and then turned the matter over to Defendant Shmidt. Those facts provide no reasonable basis to infer reckless disregard.

Similarly, the fact that Applebey was more circumspect about providing Plaintiff opioids in prison does not, standing alone, evidence a reckless disregard for Plaintiff's medical needs. Generally, "[a] prison doctor's failure to follow an outside specialist's recommendation does not necessarily establish inadequate care." *Rhinehart v. Scutt*, 894 F.3d 721, 742 (6th Cir. 2018); *see also Fairley v. Westcomb*, No. 2:19-cv-46, 2020 WL 4721436, at *3–5 (W.D. Mich. June 26, 2020), *R&R adopted*, 2020 WL 4698792 (Aug. 13, 2020) (determining that medical provider's decision to dispense Ultram instead of outside surgeon's prescription of Norco was not inadequate care); *Lazarus v. Abilittif*, No. 1:12-cv-1279, 2013 1500658, at *4–5 (W.D. Mich. Apr. 10, 2013) (same); *Tillman v. Alfred*, No. 2:20-cv-12196, 2020 WL 5291965, at *3 (E.D. Mich. Sept. 4, 2020) (same); *Draugn v. Bouchard*, No. 15-14446, 2018 WL 4571610, at *9 (E.D. Mich. Aug. 24, 2018), *R&R adopted*, 2018 WL 4566689 (Sept. 24, 2018) (same).

Plaintiff offers nothing more than the fact that the amount and kind of medication dispensed by Applebey differed from the surgeon's recommendation as support for an inference that Applebey recklessly disregarded Plaintiff's medical needs. That is not enough. Indeed, Plaintiff even explains why the CCCF medical providers may have been wary of dispensing more Norco—not because they recklessly disregarded his well-being—because they were concerned about Plaintiff's possible addiction to the opioid. (ECF No. 1, PageID.27.)

Because Plaintiff has failed to allege facts to satisfy the subjective element of this claim against Defendant Applebey, Plaintiff fails to state a Fourteenth Amendment claim against Defendant Applebey.

### b.      Defendant Shmidt

Defendant Shmidt's response to Plaintiff's complaint upon his return to the CCCF during August of 2022 also fails to show a reckless disregard for Plaintiff's health. She promptly agreed to schedule the surgery.

After the surgery, Plaintiff alleges Defendant Shmidt's direct involvement in only the third Norco prescription. With regard to that prescription, Defendant Shmidt agreed to provide Plaintiff 2 Norco a day for fifteen days. Plaintiff suggests that he was cut-off after ten days, but he does not state that it was Defendant Shmidt's decision to cut him off. Even if Defendant Shmidt made that decision, Plaintiff has failed to establish the subjective element of a Fourteenth Amendment claim against Defendant Shmidt as well. There are no facts alleged to support an inference that Defendant Shmidt recklessly disregarded Plaintiff's health when she discontinued the Norco prescription.

In short, Plaintiff has failed to state a Fourteenth Amendment claim against Defendant Shmidt.

### c.      Defendant Torres

Plaintiff does not suggest that Defendant Torres had any role in the decisions regarding Plaintiff's Norco prescriptions. He alleges only that she served as the "corresponding liaison for the medical provider" with regard to all grievances. (ECF No. 1, PageID.27–28.) Section 1983 liability may not be imposed simply because an official denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee*, 199 F.3d at 300. Certainly, simply serving as the messenger would not create such liability either. A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter*, 532 F.3d at 575–76; *Greene*, 310 F.3d at 899. Plaintiff has not alleged any active constitutional behavior by Defendant Torres; therefore, he has failed to state a Fourteenth Amendment claim against her.

### D.      State Law Medical Malpractice Claims

Even if Defendants Shmidt, Applebey, and Torres did not consciously or recklessly disregard Plaintiff's serious medical needs, his factual allegations might support negligence claims against the medical professionals. There are particular procedural requirements before a litigant may present a medical malpractice claim in the Michigan courts. *See, e.g.*, *Albright v. Christensen*, 24 F. 4th 1039, 1043 (6th Cir. 2022) (describing Michigan's presuit-notice and affidavit-of-merit rules). The *Albright* court concluded the requirements did not apply in diversity actions in the federal courts. *Id.*, at 1049. After *Albright*, this Court considered whether Michigan's procedural requirements would apply where the Court was exercising supplemental jurisdiction rather than diversity jurisdiction. The Court identified one important difference between the two types of jurisdiction: supplemental jurisdiction was discretionary and the court might or might not choose to exercise it. *Flint v. Eicher*, No. 2:21-cv-35, 2022 WL 22715341, at *1 (W.D. Mich. Dec. 16, 2022). The Court determined that the principle of judicial comity that informs the decision to exercise that discretion supported declining jurisdiction:

> "Judicial comity is '[t]he principle in accordance with which the courts of one state or jurisdiction will give effect to the laws and judicial decision of another, not as a matter of obligation, but out of deference and respect.'" *Hamama v. Adducci*, No. 17-cv-11910, 2018 WL 4697086, at *4 n.2 (E.D. Mich. Sept. 27, 2018); *see also Lyons v. Stovall*, 118 F.3d 327, 334 (6th Cir. 1999) (relying on the same definition). If this Court was to exercise jurisdiction over Plaintiff's state-law claims—and in the process necessarily permit claims to go forward that would be dismissed out of hand in the state courts—it would conflict with Michigan's intent to deter frivolous medical malpractice claims [through the affidavit-of-merit requirement] and, thus, impair the principles of federal-state comity.

*Id*. at *2 (quoting *Wilson v. Blue*, No. 1:22-cv-359, 2022 WL 3224456, at *7 (W.D. Mich. Aug. 10, 2022)). The Court concluded that the principles of federal-state comity supported declining to exercise supplemental jurisdiction over medical malpractice claims in the *Flint* case. This Court concludes that the same result is appropriate here for the same reason. Accordingly, the Court will

dismiss all of Plaintiff's state law medical malpractice claims without prejudice because the Court declines to exercise supplemental jurisdiction over them.

### Conclusion

Plaintiff's motions to appoint counsel will be denied. Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Corizon, YesCare, Captain Tracey Chambers, Sheriff Steven Hinkley, Registered Nurse Christina Torres, and Dr. Patricia Shmidt will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's Fourteenth Amendment claims against remaining Defendant PA Ron Applebey relating to Plaintiff's medical care at the CCCF from August 2022 to May 2024. Finally, the Court will dismiss without prejudice Plaintiff's state-law medical malpractice claims because the Court declines to exercise supplemental jurisdiction over them based upon principles of federal-state comity.

Plaintiff's Eighth Amendment claim against Defendant Applebey relating to Plaintiff's medical care at the CCCF during November and December of 2021 is the only claim that remains in the case.

An order consistent with this opinion will be entered.


Dated:   January 22, 2025                         /s/ Robert J. Jonker
                                                  Robert J. Jonker
                                                  United States District Judge